## UNITED STATES

v.

**Airman Kenneth H. DEMPSEY, FR 466–80–9644 3440th Student Squadron Lowry Technical Training Center (ATC).**

**ACM 21919.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 19 June 1975.

Decided 1 April 1976.

Opinion on rehearing, CMR, —— M.J. ——.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Captain Rex L. Fuller, III.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before ROBERTS, ORSER and SANDERS, Appellate Military Judges.

## DECISION

ROBERTS, Senior Judge:

Tried by a military judge sitting alone as a general court-martial, the accused stands convicted of several violations of the Uniform Code of Military Justice including burglary, larceny, and obstruction of justice, in violation of Articles 129, 121, and 134, 10 U.S.C. §§ 929, 921, 934. The approved sentence is a bad conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to the grade of airman basic.

Appellate defense counsel have assigned for our consideration several claims of error, but in view of our disposition of the appeal, it is appropriate that we discuss only two of the errors asserted.

We are constrained to address the first claim of error, which is that the accused was denied his right to a speedy trial, because our agreement therewith would result in the dismissal of all charges and render the other issues moot. The accused was placed in pretrial confinement on 17 March 1975 and was still confined when

finally brought to trial on 18 June 1975, a period of 94 days. If the entire period of the delay is chargeable to the Government, then the accused is entitled to dismissal of the charges because he has presumptively been denied his entitlement to a speedy trial as guaranteed by Article 10 of the Uniform Code of Military Justice. *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). But, periods of delay occasioned by defense requests are excluded from the operation of the 90-day rule established in *Burton*. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

█ The record of trial in this case reflects that a trial date was originally established for 30 April 1975, at which time there had been only 45 days of pretrial confinement. On the day before the anticipated trial date, the defense counsel submitted a request that the accused be given further psychiatric evaluation, even though he had been evaluated by a clinical psychologist at an earlier time, because of bizarre behavior that had been subsequently noted. The request was granted and the trial was postponed. The requested report of psychiatric evaluation was completed on 20 May 1975 but, because of conflicting duties of trial personnel, the case was not finally brought to trial until 18 June 1975.

We will assume that even though some of the delay between the preparation of the psychiatric report on 20 May and 18 June might be excusable as beyond the control of the Government, the Government would be charged with and required to explain that entire period. We note too, that under some circumstances the necessity for psychiatric evaluation might be considered "[a] normal problem as . . . [is] caused by difficulties usually encountered in the processing of charges for trial." *United States v. Beach*, 23 U.S.C.M.A. 480, 50 C.M.R. 560, 1 M.J. 118 (1975).

However, we find that in this case the eleventh hour request for psychiatric examination by the defense counsel occasioned the delay in the trial and should be excluded from the period chargeable to the Government. As noted above, the accused had already been evaluated by a psychologist before any charges were preferred. The results of this evaluation were apparently known to the defense counsel when he was appointed on 11 April 1975. It was only because of the accused's conduct following that date that the defense desired his mental condition be further explored. The decision to make the request inevitably postponed the trial. There may have been some unnecessary administrative delay chargeable to the Government between the date of the request and the preparation of the final report 20 days later. However, the report indicates that the second examining psychiatrist consulted with the accused on three occasions and that during the evaluation the accused was given a battery of psychological tests. These circumstances clearly establish that more than five days were involved in the evaluation which should be charged to the defense. Thus, the *Burton* presumption never arose, and there being nothing to show any purposeful or oppressive design on the part of the Government to delay the trial, the accused has not been denied his right to a speedy trial. *United States v. Driver*, supra; *United States v. Hensley*, 50 C.M.R. 677 (A.C.M.R.1975); see also *United States v. McClain*, 23 U.S.C.M.A. 453, 50 C.M.R. 472, 1 M.J. 60 (1975).

Even if the facts were otherwise, we have substantial doubt that the speedy trial issue has been preserved for appeal. The trial defense counsel never specifically moved that the charges be dismissed in view of the apparent violation of the 90-day rule established in *United States v. Burton*, supra. During a 39(a) session held on 4 June 1975, at which time the trial counsel was not prepared to go to trial because of his participation in other cases, the defense counsel did demand that the Government proceed. During the discussion of the scheduling problems, both counsel and the military judge made remarks clearly indicating that they had *United States v. Burton*, supra, in mind while trying to arrive at an agreeable date.

■ Although it is apparent the participants in the trial were concerned about the *Burton* 90-day rule, the record, which was examined by the defense counsel, does not show that a motion to dismiss the charge because of a presumptive violation of Article 10 was ever made at trial. Counsel probably intended to make such a motion, and, indeed, he may have believed that he did. It is noted that in his comments on the review of the staff judge advocate, he faults the author for not properly evaluating his motion to dismiss for lack of a speedy trial. But none was in fact made, and a motion to dismiss at trial is a sine qua non for consideration of the issue on appeal unless there is evidence indicating a denial of military due process or manifest injustice. *United States v. Sloan*, 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974). However, we need not decide whether the supposed speedy trial issue was waived by the trial defense counsel, for as noted above the facts do not show the denial of a speedy trial. Hence, had a motion been made, it would have been properly denied.

In the second issue we will discuss, appellate defense counsel contend that:

APPELLANT WAS, AND IS, BEING DEPRIVED OF HIS RIGHT TO SPEEDY POST–TRIAL REVIEW WHERE THERE WAS NO ACTION BY A NONDISQUALIFIED CONVENING AUTHORITY.

■ The basis for this assertion is a claim that the convening authority who took action on the record of trial was disqualified because of a promise of substantial clemency made to an important prosecution witness by his staff judge advocate. We do not agree with the assigned issue as it is framed. We are of the view that the convening authority was disqualified from acting on the record of trial, but we are not in accord with the conclusion of appellate defense counsel that the accused has thus been denied a speedy disposition of the review of his case under the rule established in *Dunlap v. Convening Authority*, 23 U.S. C.M.A. 135, 48 C.M.R. 751 (1974). As we said in *United States v. Burton*, 50 C.M.R. 547 (A.F.C.M.R.1975), pet. denied, 50 C.M. R. 903 (1975):

It is clear to us that the defense contention is an entirely unwarranted extension of the rule in *Dunlap*. In formulating the rule, Judge Quinn equated the action of the convening authority to the final imposition of the sentence, that is, the event necessary to allow appellate review; the purpose of the rule is to assure that the case is forwarded to the Court of Military Review (or to the appropriate supervisory authority in cases not reviewed by a Court of Military Review) in a timely fashion. The rule is satisfied in this case, and the appellate review of the accused's conviction and sentence has not been unduly delayed.

50 C.M.R. at page 550.

To the extent that the accused contends he is entitled to dismissal of the charges, we find the assigned error to be without merit. However, we do agree with the underlying contention that the convening authority in this case was disqualified.

■ The circumstances of the review of this case are almost identical to those that were considered by us in *United States v. Butler*, 48 C.M.R. 849 (A.F.C.M.R.1974), pet. denied, 48 C.M.R. 999. *Butler* was a case tried at the same installation as the instant case, and we judicially note that the same staff judge advocate, Colonel Allan L. Zbar, participated in both cases. In *Butler*, Colonel Zbar processed trial counsel requested grants of immunity for prosecution witnesses which were approved by the then Commander of the Lowry Technical Training Center, Major General Alton D. Slay. Because immunity had been granted to the prosecution witnesses, Colonel Zbar disqualified himself and forwarded the record of trial to the staff judge advocate of another command for review. Thereafter the record of trial and review were submitted to the succeeding Commander of the Training Center, Major General Charles C. Pattillo, who had had no prior participation in the case. Relying on *United States v. Gilliland*, 10 U.S.C.M.A. 343, 27 C.M.R. 417 (1959), we held that General Pattillo was not disquali-

fied from reviewing or acting on the record, because the disqualification resulting from a grant of immunity is *personal*, not official, and is bottomed on the grantor's assessment of and favorable prejudgment of the testimony given.[1] Appellate defense counsel now contend that *Butler* was wrongly decided and should be overruled.

We agree that *United States v. Butler*, supra, is no longer viable. About the time we released our decision in *Butler*, the United States Court of Military Appeals decided *United States v. Sierra-Albino*, 23 U.S.C.M.A. 63, 48 C.M.R. 534 (1974), a case neither cited nor apparently considered in our review of *Butler*. *Sierra-Albino* held a convening authority to be disqualified from reviewing a case because substantial clemency had been promised to a prosecution witness by a commander immediately subordinate to the convening authority, located at his installation and serviced by the same staff judge advocate. In view of the close relationship among the participants who obtained the testimony of the witness, the Court of Military Appeals held that it was "asking too much of the convening authority to free himself wholly of the influence of his subordinate's judgment in his own review and action upon the case" 48 C.M.R. at 536. More significantly, the Court of Military Appeals seemed to depart from the notion that the disqualification of the convening authority arose from his *personal* evaluation of the credibility of a witness by granting immunity or promising clemency, as expressed in the cases following *United States v. White*, 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958). Instead the Court stated that:

> The reason for the disqualification is that such action by a convening authority renders his impartiality suspect with reference to weighing the testimony of the witness to whom he granted immunity or clemency. *United States v. White*, supra.

In *[U. S. v.] Dickerson* [22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973)], we extended this principle to cases in which the convening authority knew that his subordinate commander had taken such action, believing that the relationship between the two commanders was such as likewise to preclude the sort of impartial review that the Code requires.

Both *Dickerson* and *Sierra-Albino*, seemed to turn in part upon the fact that the convening authorities involved and the subordinate commanders were intimately connected because they were located at the same installation and service by the same staff judge advocate. However, in *United States v. Chavez-Rey*, 23 U.S.C.M.A. 412, 50 C.M.R. 294, 1 M.J. 34 (1975), disqualification of the convening authority was found even though the arrangements for the prosecution witnesses' testimony had been made by an autonomous base commander of a separate installation far removed from the convening authority.

In further extension of the principles discussed in *Sierra-Albino*, the Court of Military Appeals held in *United States v. Espiet-Betancourt*, 23 U.S.C.M.A. 533, 50 C.M.R. 672, 1 M.J. 91 (1975) that merely informing the convening authority in the staff judge advocate's review that a subordinate commander had promised substantial clemency to prosecution witnesses disqualified the convening authority from reviewing the case, "due to the possible influence of his subordinate's judgment". Three months later in *United States v. Ward*, 23 U.S.C.M.A. 572, 50 C.M.R. 837, 1 M.J. 176 (1975), the Court further extended the rule by holding that reference in a staff judge advocate's review for the supervisory authority that the staff judge advocate of his subordinate commander had promised clemency to a prosecution witness would disqualify the supervisory authority because

---

1. Coincidentally, Major General Pattillo was the Commander who referred the instant charges to trial, but he was subsequently succeeded by Brigadier General Warren C. Moore who took action in the case. In the meantime,

following the procedure approved in *Butler*, the staff judge advocate had disqualified himself and forwarded the record to the staff judge advocate of another command for review.

there existed a pretrial judgment of the credibility of the witness by a subordinate, "which judgment the convening authority and the supervisory authority may be hesitant to discard." 50 C.M.R. at 842, 1 M.J. at 181.

Applying these foregoing developments in the law to the case at hand, we see that our former decision in *United States v. Butler*, supra, can no longer be followed even though the facts of the two cases are virtually identical. The reviewing staff judge advocate in this case noted that the principal prosecution witness had been given a promise of clemency acted upon with approval by Colonel Zbar. As Colonel Zbar was the staff judge advocate immediately subordinate to both Generals Pattillo and Moore, it is clear to us that the succeeding commander's knowledge of his participation in the grants of clemency disqualified him. Accordingly, his action must be set aside.

■■■ We do not find, however, that a new staff judge advocate's review is required. The review that was prepared by the competent and qualified judge advocate at Sheppard Air Force Base, and concurred in by the senior judge advocate there, is not tainted in any way by the clemency actions regarding the prosecution witness taken at Lowry Air Force Base. Although the trial defense counsel upon being given an opportunity to examine the review quarrelled slightly with the manner in which the evidence had been summarized, no substantial complaint about the quality of the review was made by him, nor is any deficiency in the review asserted on appeal. It is not necessary in every case, although it is the usual procedure, that a review be prepared personally by the assigned staff judge advocate to the convening authority who acts on the case. As noted by the Court of Military Appeals in *United States v. Kema*, 10 U.S. C.M.A. 272, 27 C.M.R. 346 (1959):

> As we interpret the [language of Article 61] . . . Congress was looking toward an ultimate objective with practicability in mind. . . . [I]t was inter-

ested in insuring that a seasoned legal officer would familiarize himself with the record so that he could pass judgment on the factual and legal issues raised, and properly advise the convening authority on the action to be taken.

27 C.M.R. at page 348.

Thus, in later cases it was held to be proper for a disqualified staff judge advocate to forward the record of trial for review by the staff judge advocate of another command. *United States v. Smith*, 13 U.S. C.M.A. 553, 33 C.M.R. 85 (1963); *United States v. Butler*, supra. Similarly, it was held by our predecessor Air Force Board of Review, that it was perfectly proper to temporarily assign a judge advocate from another command in order to prepare the review for the convening authority, *United States v. Herrington*, 33 C.M.R. 814 (A.F.B. R.1963); pet. denied, 33 C.M.R. 436 (1963). Thus, there is no magic in the provision of Article 61 that a convening authority consider a review prepared by "his" staff judge advocate. In our view, the staff judge advocate's review that has already been prepared in this case thoroughly summarizes the evidence on both sides, provides adequate guideposts by which to determine anew the guilt or innocence of the accused and gives reasons for the conclusions and opinions expressed in the review with respect to contested issues. *United States v. Nelson*, 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1973). Under these circumstances it is apparent that tasking another staff judge advocate with a new examination of the record and a preparation of an entirely new review would be an unnecessary burden.

For the reasons stated, the action of the convening authority is set aside. The record of trial is returned to The Judge Advocate General of the United States Air Force for reference to another convening authority for a new action following consideration of the existing staff judge advocate's review.

ORSER and SANDERS, Judges, concur.