**UNITED STATES, Appellee,**

v.

**Specialist Four Ruben M. HERNANDEZ, SSN 556–92–6758, United States Army, Appellant.**

**CM 434326.**

U. S. Army Court of Military Review.

28 July 1977.

---

Lieutenant Colonel James Kucera, JAGC, Captain John R. Osgood, JAGC, and Captain Barry J. Wendt, JAGC, were on the pleadings for appellant.

Lieutenant Colonel Donald W. Hansen, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, Captain Richard S. Kleager, JAGC, and Captain Dale L. Anderson, JAGC, were on the pleadings for appellee.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Judge:

At a bench trial, the appellant entered pleas of guilty pursuant to a pretrial agreement, to multiple offenses of conspiracy to sell heroin, possession, and transfer of heroin in violation of Articles 81 and 134, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 881 and 934). He was sentenced to a dishonorable discharge, confinement at hard labor for eight years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the confinement portion of the sentence to three years.

On appeal, the appellant assigns as error, among others, that the convening authority was disqualified to refer the appellant's case to trial because he had granted clemency to several prosecution witnesses.

The operative facts are that two soldiers, Williams and Glover, were arrested by the CID for drug transactions involving heroin. Both soldiers were charged with offenses under the UCMJ. A third soldier, Lightfoot, was arrested by his commander for possession of heroin and was subsequently charged with that offense. The arrest of Williams and Glover was based upon information supplied by Lightfoot who was acting as a confidential informant. Lightfoot

was arrested based upon information supplied by Williams.

A civilian attorney who represented Glover contacted Captain Morton, one of the unit's prosecutors and proposed an exchange of testimony in return for an administrative discharge for his client. The meeting was attended by the unit prosecutor, the command's Chief of Military Justice, Captain Frankel, and the command staff judge advocate. The attorney offered evidence as to the source of the heroin which had been found on Glover and other related crimes committed in the Baumholder area. He further promised that his client could provide the names of other individuals who had received heroin from the same source (Williams and Lightfoot). Captain Morton then discussed the case with Williams and his counsel and confirmed that information implicating the appellant could be provided. Captain Morton then provided the evidence gained from his inquiries to the CID who arrested the appellant for the crimes charged. Glover and Williams were allowed to submit requests for administrative discharges [1] which were approved by the convening authority, and the charges against Lightfoot were dropped. These actions were taken with the understanding that the three soldiers would testify against the appellant. Captain Morton then contacted the appellant's company commander and provided him with the information gained from the foregoing sources.[2] The company commander had previously been in contact with the CID and as a consequence of these actions, preferred charges against the appellant. Captain Morton made the recommendation for the grants of clemency to the Chief of Military Justice but did discuss the situation on one other occasion with the command staff judge advocate.

The three soldiers who received clemency were the principal witnesses against the appellant at the Article 32 investigation.

At trial, defense counsel objected to the referral of the appellant's case by the convening authority as the defense contended he was disqualified. The military judge overruled their objection. The appellant then pleaded guilty.

Following the trial, the staff judge advocate omitted any reference of the defense motions in his post-trial review. Service of the review was made upon the civilian defense counsel who did not respond thereto. The convening authority then took action on the case.

At issue in this case is the question of whether the staff judge advocate and the convening authority were disqualified from referring this case to trial and its subsequent review by reason of prior conduct which was incompatible with the standards of impartiality required by the law.

## I

■ It has long been established that the convening authority who grants immunity to a witness who testifies in that case, is disqualified from taking a post-trial action on the record of trial.[3] The rationale behind this prohibition is that it is asking too much of the convening authority to impartially determine the weight to be given to the immunized witness' testimony since he had granted the witness immunity in order to obtain his testimony and that act implies a judgment on the convening authority's part that the testimony so bargained for is truthful.[4]

■ A staff judge advocate who recommends or procures a grant of immunity for a witness is disqualified from participating in the post-trial review for the same rea-

---

1. Chapter 10, AR 635–200.

2. Captain Morton was detailed as prosecutor to the 2nd Brigade, 8th Infantry Division.

3. *United States v. White,* 10 U.S.C.M.A. 63, 27 C.M.R. 137 (1958).

4. *United States v. White, supra; United States v. Williams,* 21 U.S.C.M.A. 292, 45 C.M.R. 66 (1972); *United States v. Maxfield,* 20 U.S.C.M.A. 496, 43 C.M.R. 336 (1971).

sons a convening authority is disqualified from taking action in the case.[5]

Also, there is no substantial difference between reduction in the degree of punishment a witness may receive by reason of an agreement with the convening authority to testify in a given case and a total grant of immunity to that witness in order to require his testimony.[6]

■ With regard to the act of referral, the convening authority acts in a capacity similar to a grand jury. The sole question for his determination at that stage of the proceedings is whether there is probable cause to believe that a crime has been committed and the accused may have committed that crime. The act of referral is only a submission to a court-martial for a determination of that question by the finders of fact.[7] In contrast, the convening authority in taking a post-trial action, is himself a fact finder and must weigh the evidence and determine either that the evidence proves the accused guilty beyond a reasonable doubt or, if it does not, he must disapprove the findings of guilty. Therefore, in the absence of a showing of prejudice to the accused by virtue of the convening authority's action, the granting of immunity to a prosecution witness does not, *ipso facto*, preclude him thereafter referring the case to trial.[8]

■ As noted, the staff judge advocate is placed in a similar position to that of the convening authority. He may be disqualified from further participation in the case if his prior conduct in that case is incompatible with the standards of impartiality required by the law. He must be free to evaluate the proceeding without being required to recommend approval of a finding and sentence engineered by his own handwork.[9] Also he is not precluded from advising either side [10] but if he unites with one or the other in function or conduct, he disqualifies himself from acting as staff judge advocate.[11]

■ Turning to the factual situation before us, we find that the grants of clemency given to the three principal witnesses against the appellant were the product of an investigation made by Captain Morton, the brigade prosecutor. As such, he was disqualified from further participation in the case.[12]

■ We believe that the staff judge advocate's participation in these grants of clemency was limited to attendance with Captain Morton at a meeting with a Mr. Cohen, the attorney for the witness Glover on or about 30 July and a casual conversation with Captain Morton at a later date. As the legal representative for the convening authority, it was appropriate that he should be made aware of such proposals and he could lawfully advise Captain Morton with regard to the position he might take in this matter. There is no indication that he united with the prosecution or otherwise departed from a fair and impartial role in these proceedings.[13] It is clear that the

---

5. *United States v. Cash,* 12 U.S.C.M.A. 708, 31 C.M.R. 294 (1962); *United States v. Albright,* 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958); *see also United States v. Gilliland,* 10 U.S.C.M.A. 343, 27 C.M.R. 417 (1959).

6. *United States v. Dickerson,* 22 U.S.C.M.A. 489, 47 C.M.R. 790 (1973); *United States v. Donati,* 14 U.S.C.M.A. 235, 34 C.M.R. 15 (1963).

7. *United States v. Moffett,* 10 U.S.C.M.A. 169, 27 C.M.R. 243 (1959).

8. *Id. United States v. White, supra; United States v. Marks,* 19 U.S.C.M.A. 389, 41 C.M.R. 389 (1970); *Green v. Widdecke,* 19 U.S.C.M.A. 576, 42 C.M.R. 178 (1970).

9. *United States v. Kennedy,* 8 U.S.C.M.A. 251, 24 C.M.R. 61 (1957); *United States v. Smith,* 49 C.M.R. 325 (N.C.M.R.1974).

10. *United States v. Gunnels,* 8 U.S.C.M.A. 130, 23 C.M.R. 354 (1957).

11. *United States v. Sierra-Albino,* 23 U.S.C. M.A. 63, 48 C.M.R. 534 (1974).

12. *See* Article 27(a), Uniform Code of Military Justice, paragraph 44b, Manual for Courts-Martial, United States, 1969 (Revised edition).

13. We note that the sum of the statement of Captain Morton taken by the appellant's attorneys indicated that Morton, not the staff judge advocate, was instigating the investigation and

moving parties in this request for clemency were the attorneys for respective witnesses and Captain Morton. Accordingly, we hold that the staff judge advocate was not disqualified from making recommendations to the convening authority concerning the referral of the appellant's case.

■ We further hold that the convening authority was not disqualified to refer the appellant's case to trial. His act of granting clemency to the witnesses in return for their testimony was no more than the equivalent of a grant of immunity. As such, it was a statutory ministerial act and we find he did not depart from a fair and impartial judicial role. The evidence was sufficient for him to find that a crime had been committed and there was probable cause to believe the appellant committed that crime.

## II

■ Following trial, the appellant's case was reviewed by the staff judge advocate. In his review of the appellant's trial, he omitted any reference to the appellant's motion to have the charges dismissed for lack of jurisdiction by reason of improper referral. The staff judge advocate is required to review any motion made in the case which involves an issue which could have determined the ultimate disposition of the case.[14] His failure to do so constitutes error. However, appellant's counsel had an adequate opportunity to comment upon the staff judge advocate's failure to discuss the motion and they failed to do so.[15] As such, defense counsel's failure to comment on the staff judge advocate's omission constituted a waiver of the error.[16]

## III

As we have noted, the convening authority's disqualification to take a post-trial action in a given case where he has given a grant of immunity or its equivalent in the form of pretrial clemency is based upon the notion that by procuring a given witness' testimony under such circumstances, the convening authority necessarily implies a judgment that the testimony so bargained for is truthful.

■ Where the appellant subsequently enters a plea of guilty and the disqualifying witnesses are not then required to testify, the basis for disqualification of the convening authority and, in an appropriate case, his staff judge advocate are removed and no error results.[17] Such is what occurred here.

The Court has considered the assignment of error not discussed herein and we are of the opinion that it lacks merit.

The findings of guilty and the sentence are affirmed.

Judge DRIBBEN, concurs.

Senior Judge COOK, absent.

prosecution of the appellant. In addition, we note that the defense made no further efforts to supplement the record or their motion before the court by calling other potential witnesses. It appears that they were satisfied with the statements made by Captain Morton with regard to the personnel participating in the grants of clemency and the roles played by each person therein.

14. *United States v. Townsend,* 39 C.M.R. 445 (A.B.R.1968).

15. *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

16. *United States v. Myhrberg,* 2 M.J. 534 (A.C.M.R. 16 July 1976).

17. *United States v. Duffey,* 46 C.M.R. 1056 (N.C.M.R.1973); *United States v. Wilson,* 43 C.M.R. 739 (A.C.M.R.1971); *United States v. Graham,* 39 C.M.R. 979 (A.F.C.M.R.1969); *United States v. Stuckey,* 32 C.M.R. 958 (A.F.B. R.1963); *see also United States v. Smith,* 23 U.S.C.M.A. 495, 50 C.M.R. 575, 1 M.J. 83 (1975).